UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES W SCHUBERT,<br>   Plaintiff,<br>  v.<br>THE BANK OF NEW YORK MELLON, et al.,<br>   Defendants. | Case No. 17-cv-00856-KAW<br><br>**ORDER GRANTING MOTION TO DISMISS, DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 1, 14, 23 |

On February 8, 2017, Plaintiff James W. Schubert brought the instant suit against Defendants The Bank of New York Mellon ("BNYM") and Bank of America, N.A ("Bank of America"), asserting claims for quiet title and declaratory relief. (Compl., Dkt. No. 1-1.) On February 21, 2017, Defendants removed the instant case from Alameda County Superior Court. (Dkt. No. 1.) Pending before the Court are: (1) Plaintiff's motion for a preliminary injunction to enjoin a trustee's sale for the pendency of this action, (2) Defendants' motion to dismiss, and (3) Plaintiff's motion for a partial summary judgment. (Plf.'s Mot. for Preliminary Injunction, Dkt. No. 1-1; Defs.' Mot. to Dismiss, Dkt. No. 14; Plf.'s Mot. for Summary Judgment, Dkt. No. 23.) Upon consideration of the moving and responding papers, as well as the arguments presented at the June 1, 2017 motion hearing, and for the reasons set forth below, the Court GRANTS Defendants' motion to dismiss, and DENIES Plaintiff's motion for partial summary judgment.

## I.  BACKGROUND

### A.  Factual Background

This case is the sixth between the parties, concerning a $600,000 equity line of credit obtained by Plaintiff on April 7, 2004. (Compl. ¶ 9; *see also* Defs.' Mot. to Dismiss at 4-5 (listing cases).) The equity line of credit was secured by a deed of trust on Plaintiff's Oakland property.

(Compl. ¶ 9; *see also* Defs.' Request for Judicial Notice, RJN, Exh. 2, Dkt. No. 14-2.[1]) Defendant The Bank of New York Mellon is the current investor in the loan, and Defendant Bank of America, N.A. is the current servicer. (*See* Defs.' RJN, Exh. 3.)

Plaintiff alleges that "a non-party individual who has at least one felony conviction, unlawfully, and without Plaintiff's permission, acquired checks from Plaintiff's checkbook and wrote checks against the Equity Loan. These checks were negotiated and then correlative amounts were then added to the balance of the Equity Loan." (Compl. ¶ 10.) Plaintiff does not specify when these acts took place in his complaint, but provided supplemental briefing indicating this occurred in 2004. (Schubert Decl., Exh. C, Dkt. No. 33-2.) Plaintiff alleges, however, that he owes "no sum of money on the Equity Loan because any sums borrowed against it were repaid in full years ago." (Compl. ¶ 27.)

On April 17, 2009, Plaintiff filed *Schubert v. Countrywide Bank, N.A.*, Alameda County Superior Court Case No. RG09447532 (*Schubert I*). The case raised fraud claims related to the loan, and was dismissed with prejudice on August 5, 2011.

On July 13, 2010, Plaintiff filed *Schubert v. Bank of America Corp.*, Alameda County Superior Court Case No. RG10525100 (*Schubert II*). The case challenged the filing and posting of a July 9, 2010 Notice of Trustee's Sale, alleging violations of California Civil Code § 2923.5, 2924, 2924c, and 2924(b)(1). (*See* Defs.' RJN, Exh. 16.) Plaintiff dismissed the case without prejudice on August 10, 2010.

On July 20, 2010, Plaintiff filed *Schubert v. Bank of America Corp.*, Alameda County Superior Court Case No. RG10526531 (*Schubert III*). The case challenged the filing and posting of the same July 9, 2010 Notice of Trustee's sale, alleging violations of California Civil Code § 2923.5, 2924, 2924c, and 2924(b)(1). (*See* Defs.' RJN, Exh. 17.) Plaintiff dismissed the case without prejudice on September 12, 2012, after the Court sustained Defendants' demurrer in part.

On September 12, 2012, Plaintiff filed *Schubert v. Bank of America Corp.*, Alameda

---

[1] Defendants filed two requests for judicial notice: one in support of their opposition to Plaintiffs' motion for a preliminary injunction, and one in support of their motion to dismiss. (Dkt. Nos. 3, 14-2.) The requests for judicial notice attach the same exhibits. The Court therefore relies on the request for judicial notice in support of Defendants' motion to dismiss.

County Superior Court Case No. RG12647408 (*Schubert IV*). The case challenged the filing of the July 9, 2010 Notice of Trustee's sale, alleging violation of California Penal Code § 115, slander of title, quiet title, violation of the Real Estate Settlement Procedures Act ("RESPA"), and fraud. (*See* Defs.' RJN, Exh. 18.) Plaintiff dismissed the case without prejudice on February 28, 2013.

On January 4, 2013, Plaintiff filed *Schubert v. Bank of New York Mellon*, Alameda County Superior Court Case No. RG13662247 (*Schubert V*). The case alleged that he had paid off the 2004 equity line of credit in 2008, extinguishing BNYM's interest. (*Schubert V* Compl. ¶¶ 8-9, Defs.' RJN, Exh. 19.) Based on these facts, Plaintiff brought claims for slander of title and quiet title. (*Schubert V* Compl. ¶¶ 16, 19.) Plaintiff now alleges that *Schubert V* was resolved "by an apology from senior bank management and the bank paying [Plaintiff] $50,000." (Compl. ¶ 12.) Plaintiff was allegedly informed by a BNYM executive that "because Plaintiff had never requested that the Equity Loan be closed[, ] it had to remain recorded." (*Id.*) Pursuant to the settlement, the case was dismissed with prejudice on November 13, 2014.

On November 13, 2014, Defendants filed *Bank of New York Mellon v. Zheng*, Alameda County Superior Court Case No. RG14748045 (*BNYM I*). The case alleged that after Plaintiff filed *Schubert V*, BNYM inadvertently failed to respond. (*BNYM I* Compl. ¶ 8, Defs.' RJN, Exh. 21.) Plaintiff then obtained a default judgment on July 12, 2013, "purporting to quiet title to the property in his favor and cancel[ling] BNYM's 2004 Deed of Trust." (*Id.*, *see also BNYM I* Compl., Exh. C.) A few hours later, Mr. Xiao Zheng recorded a deed of trust, purporting to secure a promissory note dated July 11, 2013 for a $685,000 loan from Mr. Zheng to Plaintiff. (*BNYM I* Compl. ¶ 9, Exh. D.) The judgment was set aside on August 21, 2013, and expunged from the record. (*BNYM I* Compl. ¶ 10.) Based on these facts, BNYM sought declaratory relief regarding priority of the deeds of trust, namely that the "2004 Deed of Trust and Assignment are superior to the 2013 Deed of Trust because the 2004 Deed of Trust was first in time and because the Judgment purporting to quiet title to the Property in Schubert's favor and cancel the 2004 Deed of Trust were expunged pursuant to a Court Order." (*BNYM I* Compl. ¶ 14.) *BNYM I* was limited to declaratory relief; it did not seek to foreclose on the security. (*BNYM I* Compl. at 5; *see also*

3

Compl. ¶ 14.) BNYM and Bank of America brought a motion for summary judgment against Plaintiff; during the course of briefing, BNYM and Bank of America asserted that Plaintiff owed them money. (Compl. ¶ 16.) Plaintiff then reserved a date to bring a motion to file a cross-complaint for a declaration that he did not own BNYM and Bank of America any money; before the motion could be heard, BNYM and Bank of America settled with Mr. Zheng, and filed a dismissal of the action on April 21, 2016. (Compl. ¶ 18; Defs.' RJN, Exh. 22.) Pursuant to the settlement, a subordination agreement was recorded which prioritized BNYM's 2004 deed of trust over Mr. Zheng's 2013 deed of trust. (Defs.' RJN, Exh. 11.)

Prior to the dismissal of *BNYM I*, Plaintiff alleges that he called "a BNYM executive and asked why the claim that he owed BNYM any sum of money had again resurfaced." (Compl. ¶ 19.) The BNYM executive allegedly informed Plaintiff that "the bank would do a 'retraxit' that would act as a judgment in Plaintiff's favor, and result in the invocation of the one action rule, rendering the lien removed from his property." (*Id.*)

On September 29, 2016, Defendants recorded a notice of default against the Oakland property. (Compl. ¶ 21.)

### B. Procedural Background

On February 8, 2017, Plaintiff filed the instant suit in Alameda County Superior Court, bringing claims for quiet title and declaratory relief that: (1) Plaintiff had repaid the equity loan in full, and (2) Defendant had given up their right to non-judicial foreclosure under the "one form of action rule," based on their filing *BNYM I*. (Compl. ¶¶ 27, 32.) On February 10, 2017, Plaintiff applied for a temporary restraining order to enjoin any foreclosure sale. (Dkt. No. 1-1 at 35.[2]) The state court granted the temporary restraining order application, and set a preliminary injunction hearing for February 27, 2017. (Dkt. No. 1-1 at 43-44.)

On February 14, 2017, Plaintiff filed his motion for a preliminary injunction. (Plfs.' Mot. for Preliminary Injunction, Dkt. No. 1-1 at 67-75.) On February 21, 2017, Defendants removed the case to federal court. (Dkt. No. 1.) That same day, Defendants filed their opposition to

---

[2] With respect to documents attached to Defendants' notice of removal, the Court refers to the ECF header page numbers.

4

Plaintiff's motion for a preliminary injunction. (Defs.' Opp'n to Mot. for Preliminary Injunction, Dkt. No. 2.)

On February 24, 2017, Plaintiff filed an ex parte application for an order confirming that the temporary restraining order issued by the Alameda County Superior Court would remain in place until the Court ruled on Plaintiff's motion for a preliminary injunction. (Dkt. No. 12.) On February 27, 2017, the Court granted Plaintiff's ex parte application, ordering that the temporary restraining order would remain in effect until the Court ruled on Plaintiff's motion for a preliminary injunction. (Dkt. No. 13.) The Court also ordered Plaintiff to file a reply brief addressing the res judicata argument as to *Schubert V*. Pursuant to the Court's order, Plaintiff filed a reply brief on March 8, 2017. (Plf.'s Reply re Mot. for Preliminary Injunction, Dkt. No. 16.)

On March 2, 2017, Defendants filed a motion to dismiss. (Defs.' Mot. to Dismiss, Dkt. No. 14.) On March 16, 2017, Plaintiff filed his opposition. (Plf.'s Opp'n to Mot. to Dismiss, Dkt. No. 20.) On March 23, 2017, Defendants filed their reply brief. (Defs.' Reply re Mot. to Dismiss, Dkt. No. 22.)

On April 3, 2017, Plaintiff filed a motion for partial summary judgment, specifically on the issue of whether Defendants waived their security interest in the subject property by filing *BNYM I*. On April 17, 2017, Defendants filed their opposition.[3] (Defs.' Opp'n to Mot. for Summary Judgment, Dkt. No. 32.) On April 24, 2017, Plaintiff filed his reply. (Plf.'s Reply re Mot. for Summary Judgment, Dkt. No. 34.)

On April 6, 2017, the Court issued an order for supplemental briefing, requesting further information on the facts on which Plaintiff is basing his allegation that he repaid in full the 2004 equity line of credit, and when Plaintiff believes the unknown individual wrote checks against the 2004 equity line of credit. (Dkt. No. 28.) On April 21, 2017, Plaintiff filed his supplemental brief.

---

[3] In support of their opposition, Defendants filed a declaration by BriAnna May, which discusses the amounts allegedly owed on the 2004 equity line of credit. (Dkt. No. 32-1.) On April 21, 2017, Plaintiff filed an evidentiary objection to the May declaration. (Dkt. No. 33-1.) The Court denies the evidentiary objections as moot because it did not consider the May declaration; the May declaration is not relevant to the motion for partial summary judgment, which is limited to the issue of whether the one action rule applies in this case. Thus, whether or not Plaintiff owes money on the 2004 equity line of credit is irrelevant to that motion.

(Plf.'s Supp. Brief, Dkt. No. 33.) On April 28, 2017, Defendants filed their supplemental response to Plaintiff's supplemental brief. (Defs.' Supp. Brief, Dkt. No. 35.)[4]

## II. LEGAL STANDARDS

### A. Request for Judicial Notice

A district court may take judicial notice of facts not subject to reasonable dispute that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *United States v. Bernal-Obeso*, 989 F.2d 331, 333 (9th Cir. 1993). A court may, therefore, take judicial notice of matters of public record. *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).

### B. Preliminary Injunction

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). The party seeking an injunction bears the burden of proving these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009). The Ninth Circuit applies a "sliding scale" approach; "[u]nder this approach, the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another. For example, a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Further, the Ninth Circuit has found that "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.* at

---

[4] On May 30, 2017, Plaintiff filed a "response" and evidentiary objections to Defendants' supplemental response. (Dkt. Nos. 36-37.) Plaintiff did not seek permission to file his "response," nor does he explain why he waited over a month after Defendants filed their supplemental response -- and less than two days before the hearing -- to file it. Accordingly, the Court does not consider the "response."

In any case, Plaintiff's "response" and evidentiary objections challenge the deposition transcripts attached to Defendants' supplemental response, as well as the exhibits attached to Ms. May's declaration. (Dkt. No. 36 at 2-3.) Neither was relied upon by the Court in this case, and thus consideration of Plaintiff's May 30, 2017 filings would not affect the Court's rulings.

6

1132. Demonstrating "serious questions going to the merits" requires "a lesser showing than likelihood of success on the merits." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013). Still, while "[s]erious questions need not promise a certainty of success, nor even present a probability of success," they "must involve a fair chance of success on the merits." *Republic of Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988).

### C. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation marks omitted).

A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Threadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate. *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . When a complaint pleads facts that are merely consistent with a defendant's

7

liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations omitted).

### D. Motion for Summary Judgment

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when, after adequate discovery, there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law. *Id.*; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Southern Calif. Gas. Co. v. City of Santa Ana,* 336 F.3d 885, 888 (9th Cir. 2003).

On an issue where the nonmoving party will bear the burden of proof at trial, the moving party may discharge its burden of production by either (1) "produc[ing] evidence negating an essential element of the nonmoving party's case" or (2) after suitable discovery, "show[ing] that the nonmoving party does not have enough evidence of an essential element of its claim or defense to discharge its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000); *see also Celotex*, 477 U.S. at 324-25.

Once the moving party meets its initial burden, the opposing party must then set forth

8

specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See* Fed. R. Civ. P. 56(e); *Anderson,* 477 U.S. at 250. "A party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001). "Instead, the non-moving party must go beyond the pleadings and by its own evidence set forth specific facts showing that there is a genuine issue for trial." *Id.* (citations and quotations omitted). The non-moving party must produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NMS Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise a genuine issue of material fact to defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Electronics Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

In deciding a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Anderson,* 477 U.S. at 255; *Hunt v. City of Los Angeles,* 638 F.3d 703, 709 (9th Cir. 2011).

### III. DISCUSSION

#### A. Request for Judicial Notice

Here, the parties have filed three requests for judicial notice.

First, Defendants filed identical requests for judicial notice in support of their opposition to Plaintiff's motion for a preliminary injunction and Defendants' motion to dismiss. (Dkt. Nos. 3, 4, 14-2.) Defendants ask that the Court take judicial notice of: (1) September 4, 2001 deed of trust, recorded on September 11, 2001; (2) April 7, 2004 deed of trust and assignment of rents, recorded on April 13, 2004; (3) July 29, 2011 deed of trust, recorded on August 2, 2011; (4) June 30, 2010 substitution of trust and assignment deed, recorded on July 19, 2010; (5) July 29, 2011 substitution of trustee, recorded on August 2, 2011; (6) notice of default and election to sell under the deed of trust, recorded on June 22, 2007; (7) notice of trustee's sale, recorded on July 19, 2010; (8) notice of trustee's sale, recorded on August 2, 2011; (9) notice of rescission of declaration of default, recorded on August 22, 2012; (10) July 11, 2013 deed of trust, recorded on July 12, 2013; (11) May 19, 2016 subordination agreement, recorded on June 22, 2016; (12) assignment of deed of

9

trust, recorded on November 21, 2016; (13) notice of default and election to sell under the deed of trust, recorded on September 29, 2016; (14) notice of trustee sale, recorded on January 18, 2017; (15) February 10, 2017 temporary restraining order; (16) *Schubert II* complaint; (17) *Schubert III* complaint; (18) *Schubert IV* complaint; (19) *Schubert V* complaint; (20) request for dismissal with prejudice in *Schubert V*; (21) *BNYM I* complaint; and (22) request for dismissal with prejudice in *BNYM I*. Plaintiff did not file an opposition.

The Court takes judicial notice of the documents filed in the court proceedings (Exhibits 15-22), as judicial notice may be taken of court records. *See* Fed. R. Evid. 201(b)(2); *Wilson*, 631 F.2d at 119 ("a court may take judicial notice of its own records in other cases, as well as the records of an inferior court in other cases"). As for the remaining documents, Plaintiff did not file an opposition to Defendants' request for judicial notice, and so Plaintiff is not deemed to dispute the authenticity of any of the exhibits. The remaining documents are true and correct copies of official records, whose authenticity is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). Accordingly, the Court GRANTS Defendants' request for judicial notice, in support of Defendants' opposition to the motion for preliminary injunction and Defendants' motion to dismiss.

Second, Plaintiff filed a request for judicial notice in support of his opposition to Defendants' motion to dismiss. (Dkt. No. 20-1.) Plaintiff seeks judicial notice of a September 20, 2013 order issued by the Alameda Superior Court in *Schubert V*, in which the Superior Court found that Plaintiff's case was not barred by res judicata. Defendants did not file an opposition. The Court GRANTS Plaintiff's request for judicial notice and takes judicial notice of the September 20, 2013 order, as judicial notice may be taken of court records. *See* Fed. R. Evid. 201(b)(2).

Finally, Plaintiff filed a request for judicial notice, in support of his motion for partial summary judgment. (Dkt. No. 24.) Plaintiff seeks judicial notice of: (1) the deed of trust and assignment of rents, recorded on April 13, 2004; (2) the *BNYM I* complaint; (3) the request for dismissal with prejudice in *BNYM I*, (4) the notice of default recorded on September 29, 2016; and (5) the notice of trustee's sale recorded on January 18, 2017. These are the same documents as

10

Defendants' request for judicial notice, exhibits 2, 21, 22, 13, and 14, respectively. For the reasons discussed above, the Court GRANTS Plaintiff's request for judicial notice, in support of his motion for partial summary judgment.

**B. Merits**

The three motions at issue all concern the same overlapping issues, namely: (1) whether the claims for quiet title and declaratory relief that Plaintiff owes no money on the 2004 equity line of credit is barred by res judicata, due to Plaintiff's filing of *Schubert V*, and (2) whether Defendants are barred from foreclosing on the Oakland property under the "one form of action" rule. The Court addresses each in turn.

**i. Res Judicata**

Defendants contend that the instant lawsuit is barred by res judicata on the grounds that Plaintiff has litigated the same claims in *Schubert V*. (Defs.' Opp'n to Mot. for Preliminary Injunction at 6; Defs.' Motion to Dismiss at 6.) The Court agrees.

"Res judicata, also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action." *W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997). The doctrine of res judicata "bars a party from bringing a claim if a court of competent jurisdiction has rendered a final judgment on the merits of the claim in a previous action involving the same parties or their privies." *In re Int'l Nutronics, Inc.*, 28 F.3d 965, 969 (9th Cir. 1994). "Under California law, voluntary dismissal of an action with prejudice constitutes final determination on the merits and satisfies the requirement for *res judicata*." *Sierra Management v. City of Sonoma*, No. C-95-1664 SC, 1996 WL 147632, at *3 (N.D. Cal. Mar. 27, 1996) (citing *Roybal v. Univ. Ford*, 207 Cal. App. 3d 1080, 1085-87 (1989) ("A dismissal with prejudice by plaintiff of its action is a bar to a subsequent action of the same cause; otherwise there would be no meaning to the 'with prejudice' feature. A dismissal with prejudice terminates the action and the rights of the parties are affected by it. It is a final judgment in favor of defendants"); *see also Intermedics, Inc. v. Ventritex, Inc.*, 775 F. Supp. 1258, 1262 (N.D. Cal. 1991) ("a voluntary dismissal, with prejudice, entered by stipulation of the parties, is considered a final judgment on the merits for purposes of res judicata").

Here, the parties do not dispute that *Schubert V* involved a final judgment on the merits or the same parties or their privies. Rather, the primary dispute is whether *Schubert V* involves the same *claims* as the instant case. In *Schubert V*, Plaintiff asserted that the 2004 equity line of credit was paid off in 2008, extinguishing BNYM's interest. (*Schubert V* Compl. ¶ 9.) Plaintiff asserted several claims, including quiet title, to determine whether BNYM's lien was still valid. (*Schubert V* Compl. ¶¶ 11, 19.) In the instant case, Plaintiff again asserts a claim for quiet title and declaratory relief, on the ground that Plaintiff paid back in full the equity line of credit, such that Plaintiff no longer owes Defendants any money. (Compl. ¶¶ 25, 27.)

Although these claims are the same (*i.e.*, that Plaintiff no longer has a debt to BNYM because he paid off his debt), and based on the same loan, as Plaintiff points out, this does not necessarily mean that the *facts* underpinning the claims are the same. (*See* Plf.'s Opp'n to Mot. to Dismiss at 6.) Specifically, res judicata would not apply if, for example, *Schubert V* is based on Plaintiff paying off the 2004 equity line of credit in 2008, whereas the instant case is based on Plaintiff drawing from the equity line of credit *after Schubert V*, and then paying that amount off. There, the current case would be based on a different set of facts, even if the claims are similar and based on the same loan, as it would concern a separate drawing down and subsequent repayment of the equity line of credit. Moreover, such facts could not have been raised in *Schubert V* if these events occurred after *Schubert V* was voluntarily dismissed by Plaintiff in November 2014. Similarly, Plaintiff now brings allegations that an "unknown individual" unlawfully acquired checks from Plaintiff's checkbook and wrote checks against the line of credit. (Compl. ¶ 10.) If this action took place after *Schubert V* and is the reason Plaintiff now allegedly owes money on the equity line of credit, res judicata would not operate to bar the current case.

Based on Plaintiff's supplemental briefing, however, it is clear that the instant case and *Schubert V* are based on the same sets of facts. The Court asked Plaintiff to provide the facts upon which he was basing his allegation that he repaid in full the 2004 equity line of credit, and when Plaintiff believes the unknown individual drew money on his 2004 equity line of credit. (Dkt. No. 28.) In response, Plaintiff asserts that he drew on the equity line of credit in checks dated May 11, 2004, June 4, 2004, June 14, 2004, July 13, 2004, July 15, 2004, October 19, 2004, and November

12

4, 2004. (Schubert Decl., Exh. A, Dkt. No. 33-2.) Plaintiff also authorized a wire on April 22, 2004. (Schubert Decl., Exh. B.) Plaintiff then states that he made payments on the equity line of credit in 2007 and 2008, with the last payment dated June 12, 2008. (Plf.'s Supp. Briefing at 2; Schubert Decl., Exh. D.) Meanwhile, the allegedly forged checks were from April and May 2004. (Schubert Decl., Exh. C.)

All of the facts concerning repayment of the equity line of credit occurred prior to and are encompassed by *Schubert V*, where Plaintiff likewise asserted that he paid off the 2004 equity line of credit in 2008. Even if there was no foreclosure pending at the time *Schubert V* was filed, both the instant case and *Schubert V* are quiet title claims based on the same set of facts, namely that Plaintiff paid off the debt in 2008.[5] Thus, res judicata applies as to Plaintiff's assertion that he is entitled to relief based on his repayment of the debt in 2008.[6]

With respect to Plaintiff's claim that any unpaid amounts on the loan were due to an unknown individual drawing on the line of credit in 2004, although this is a fact not alleged in the *Schubert V* complaint, Plaintiff confirmed at the hearing that *Schubert V* was based on these facts as well. Thus, res judicata would apply to these facts. Accordingly, to the extent Plaintiff's claims rely on the repayment of the debt in 2008 or the unknown individual drawing on the line of credit in 2004, Plaintiff's claims must be dismissed with prejudice.

### C. One Form of Action

Plaintiff argues that Defendants are barred from foreclosing under the "one form of action" rule. (Plf.'s Mot. for Preliminary Injunction at 6-7; Plf.'s Opp'n to Mot. to Dismiss at 10-13; Plf.'s

---

[5] At the hearing, Plaintiff argued that there was a new injury based on the new notice of intent to foreclose, and thus res judicata would not apply. Accepting this argument, however, would permit a plaintiff to repeatedly re-litigate the same facts based on every new notice of foreclosure, even if a court previously decided the issue in an earlier suit.

[6] Plaintiff cites to the state court ruling in *Schubert V* that the case was not barred by res judicata, based on the prior-filed cases. That ruling is not relevant to the Court's decision here, as that ruling was premised on the fact that the prior actions were "based on alleged irregularities in the nonjudicial foreclosure process" whereas *Schubert V* concerned "Plaintiff's claim that Defendant refused to reconvey title after he paid off his loan in 2008 . . . ." (Dkt No. 20-1.) The state court properly found that those cases were not based on the same facts. By contrast, here both the instant case and *Schubert V* concern Plaintiff's repayment of the loan in 2008; thus, they are based on the same facts, and res judicata applies.

13

Mot. for Summary Judgment at 4-6.)

California Code of Civil Procedure § 726(a) states in relevant part: "There can be but one form of action for the recovery of any debt or the enforcement of any right secured by mortgage upon real property or an estate for years therein, which action shall be in accordance with the provisions of this chapter." There are two components to this rule. First, "[a] secured creditor can bring only one lawsuit to enforce its security interest and collect its debt." *Sec. Pac. Nat'l Bank v. Wozab*, 51 Cal. 3d 991, 997 (1990). Second, because a creditor must rely upon his security before enforcing the debt:

> where the creditor sues on the obligation and seeks a personal money judgment against the debtor without seeking therein foreclosure of such mortgage or deed of trust, he makes an election of remedies, electing the single remedy of a personal action, and thereby waives his right to foreclose on the security or to sell the security under a power of sale."

*Id.* (internal quotation omitted). Thus, § 726 "is susceptible of a dual application - it may be interposed by the debtor as an affirmative defense or it may become operative as a sanction." *Id.* (internal quotation omitted). For example, a debtor can raise the section as an affirmative defense by requiring the creditor to "exhaust the security before he may obtain a money judgment against the debtor for any deficiency." *Id.* (internal quotation omitted). A debtor can also raise the section as a sanction "on the basis that the latter by not foreclosing on the security in the action brought to enforce the debt, has made an election of remedies and waived the security." *Id.* (internal quotation omitted). The purpose of § 726 is to "protect[] the debtor against multiplicity of suits and compel[] competitive bidding to test the value of the security for the debt." *Passanisi v. Merit-McBride Realtors, Inc.*, 190 Cal. App. 3d 1496, 1507 (1987).

In general, § 726 applies "where the creditor sues on the obligation and seeks a *personal money judgment* against the debtor without seeking therein foreclosure of such mortgage or deed of trust . . . ." *Passanisi*, 190 Cal. App. 3d at 1505 (emphasis added); *see also Sec. Pac. Nat'l Bank*, 51 Cal. 3d at 997 ("there can be but one form of action for the recovery of any debt's secured by a mortgage or deed of trust on real property, where the creditor sues on the obligation and seeks a *personal money judgment* against the debtor") (internal quotation omitted and

14

emphasis added). Thus, "the one-action rule . . . does not apply to other actions that are not directed toward collection of the debt." MILLER & STARR, CALIFORNIA REAL ESTATE § 13:206 (4th ed. 2016).

Here, Plaintiff seeks to raise § 726 as a sanction by arguing that because Defendants filed *BNYM I*, Defendants made an election of remedies and waived the security, thus barring their ability to foreclose on the Oakland property. (Plf.'s Opp'n to Mot. to Dismiss at 11; Plf.'s Mot. for Summary Judgment at 4.) Plaintiff primarily focuses on whether *BNYM I* constitutes an action; but even assuming that *BNYM I* was an action, the Court finds that § 726 is not applicable in this case because *BNYM I* was not an action for the "recovery of any debt or the enforcement of any right secured by mortgage upon real property." Instead, *BNYM I* sought only to determine the priority of its 2004 deed of trust compared to Mr. Zheng's 2013 deed of trust; it did not seek to enforce or collect on the debt itself, and did not seek a personal money judgment against Plaintiff or attachment of his assets to repay the debt. (*See BNYM I* Compl. ¶ 14.) Plaintiff does not explain why a suit limited to a determination of the priority of deeds of trust constitutes an action for the recovery of a debt or enforcement of a right secured by mortgage, particularly where the suit does not seek to enforce the debt itself.[7]

The instant case is comparable to *Meyer v. Thomas*, 18 Cal. App. 2d 299 (1936). There, the plaintiff-pledgor brought an action against the defendant-pledgees for conversion of a promissory note, where a note and deed of trust were transferred without the permission of the pledgor. Although the defendants argued that the action for conversion could not be maintained without first foreclosing on the deed of trust, the Court of Appeal found that the action for conversion "was not *on* the note but *for* the conversion of the note." *Id.* at 302. In other words, the lawsuit was based on what was happening to the note (*i.e.*, the transfers without the pledgor's permission), not the indebtedness secured by the note; it did not seek a personal judgment based

---

[7] To the extent Plaintiff argues that Defendants *could* have included a claim for judicial foreclosure, it cannot be disputed that Defendants did *not* include such a claim. Again, the lawsuit was limited solely to determination of the priority of debts; Plaintiff cites no case that suggests the one form of action rule or a retraxit can be invoked based on a potential claim that a defendant could have brought, but in fact did not.

15

on the debt owed on the note. Similarly, here the *BNYM I* case was not based on the debt secured by the deed of trust, but on what was happening to the deed of trust itself, namely its prioritization after Plaintiff exercised another deed of trust with Mr. Zheng, after trying to cancel the deed of trust held by BNYM. Thus, although the *BNYM I* case concerned the deed of trust, it did not attempt to collect on the debt secured by the deed of trust. *See also Passanisi*, 190 Cal. App. 3d at 1506 (finding that the one form of action rule did not apply where "the action was not for the recovery of any debt or the enforcement of any right secured by the deed of trust upon real property," but "to enjoin the exercise of the power of sale in the deed of trust") (internal quotation and modification omitted).

*Shin v. Superior Court*, 26 Cal. App. 4th 542 (1994), is also instructive by contrast. There, the bank filed an action against the defendants for judicial foreclosure of a California property and a deficiency judgment. *Id.* at 544. Prior to filing that action, however, the bank brought an action in Korea for a prejudgment attachment order, which was recorded against real property in Korea owned by the defendants. Although the bank argued that the Korean prejudgment attachment order was only meant to preserve the bank's priority if the bank should later obtain a judgment against the defendants, the California Court of Appeal invoked the one form of action rule based on the Korea action. *See id.* at 546, 549. The Court of Appeal explained that although the Korea action had not proceeded to judgment, it had resulted in an attachment that encumbered the defendants' property other than that which acted as security; that attachment had the practical effect of making it unlikely anyone would purchase or lend against the Korean property. *Id.* at 547. Thus, the Korea action had resulted in "an involuntary lien on additional assets of [the bank's] borrower in order to increase the collateral over and above the value of the California real property, which was the security interest originally provided for [the bank's] loan." *Id.* By seeking to restrict the defendants' use of unpledged assets to assure payment of a deficiency judgment based on a debt that was secured by other property, before then bringing suit to foreclose on the security, the bank had "confronted [the defendants] with two pending lawsuits on the same claim and only in the second one is it resorting to its security." *Id.* at 552. Key to this case, however, is that both suits sought to enforce the *debt* that was secured by the California property;

16

the Korea action sought to encumber additional assets to increase the amount of collateral above the California property, and the California action sought to foreclose on the California property itself.

While both *Shin* and *BNYM I* concern priority of interest, *Shin* is distinguishable because it arose from the bank's attempt to enforce a right secured by the deed of trust, namely by placing an attachment on property other than the security so that the bank could collect on that property in the event of a deficiency judgment. *BNYM I*, however, concerns the priority of interest of a deed of trust already on the secured property, to determine the effect of a later-recorded deed of trust. Thus, unlike *Shin*, *BNYM I* was not based on Defendants' attempt to recover a debt or enforce a right secured by the deed of trust; whether or not Plaintiff owed money on the equity line of credit was irrelevant to the priority of interest.[8] This conclusion is consistent with the goal of § 726, which is to require a creditor to exhaust his security before enforcing the debt. *See Sec. Pac. Nat'l Bank*, 51 Cal. 3d at 997. Here, Defendants were not seeking to get at Plaintiff's other assets before the real property at issue, but were only seeking to determine the priority of debt due to Plaintiff's attempt to place another deed of trust on the property. The lawsuit concerning priority of interest did not affect Plaintiff's obligations to Defendants, and thus does not raise the interests that are protected by §726.

Accordingly, the Court concludes that the one form of action rule does not apply in the instant case, and thus Defendants are not prohibited from bringing a foreclosure action against Plaintiff based on the *BNYM I* case. The Court therefore GRANTS Defendants' motion to dismiss Plaintiff's third cause of action for declaratory relief with prejudice, and DENIES Plaintiff's motion for summary judgment.

### IV. CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' motion to dismiss with

---

[8] While Plaintiff argues that Defendants cited to Plaintiff's alleged lack of repayment of a debt in its reply papers to a motion for summary judgment during *BNYM I*, there is no showing that Defendants' claim for prioritization was based on that lack of repayment of a debt.

17

prejudice, and DENIES Plaintiff's motion for summary judgment.[9] The dismissal of the quiet title action with prejudice is limited to the extent this action is based on the repayment of the debt in 2008 or the drawing on the line of credit by the unknown person in 2004.

At the hearing, Plaintiff requested leave to amend the complaint to include a cause of action based on the breach of the settlement agreement that the parties entered into in *Schubert V*. Plaintiff also requested that the Court hold Plaintiff's motion for a preliminary injunction in abeyance until after Plaintiff amends his complaint, and to have the temporary restraining order remain in effect in the interim. Based on the information before the Court, a quiet title or declaratory relief cause of action based on breach of the settlement agreement would not be foreclosed by res judicata, as the parties have not previously litigated this issue. Thus, the Court grants Plaintiff leave to add claims based on the alleged breach of the settlement agreement; Plaintiff has twenty-one (21) days from the date of this order to file a First Amended Complaint. The Court will hold the motion for a preliminary injunction in abeyance, and the TRO remains in effect. The parties shall meet and confer and stipulate to a briefing schedule on Plaintiff's motion for a preliminary injunction.

IT IS SO ORDERED.

Dated: June 14, 2017

_____
KANDIS A. WESTMORE
United States Magistrate Judge

---

[9] In their opposition to Plaintiff's motion for summary judgment, Defendants request that summary judgment be entered in their favor. (Defs.' Opp'n at 10-11.) As the Court is granting Defendants' motion to dismiss the third cause of action for declaratory relief, with prejudice, the Court declines to enter summary judgment in Defendants' favor as well.